**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO.:**

| | | |
|---|---|---|
| ARMSTRONG TIMESHARE ASSOCIATION, INC. AND FOXRUN PROPERTY OWNERS ASSOCIATION, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| vs. | ) ) | **(JURY TRIAL DEMANDED)** |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY | ) ) ) | |
| Defendant. | ) ) ) | |

      Plaintiffs, ARMSTRONG TIMESHARE ASSOCIATION ("Armstrong") and FOXRUN PROPERTY OWNERS ASSOCIATION, INC. ("Foxrun"), by and through the undersigned counsel, files this Complaint for Damages against Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Defendant") and as grounds therefore, states as follows:

## THE NATURE OF THE DISPUTE AND THE PARTIES

      1.     This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201, to determine the Parties' rights, duties, obligations, and entitlements pursuant to a policy of insurance, bearing policy number D37406107 007 with effective dates of April 1, 2021, to April 1, 2022 (the "Policy"). A copy of the Policy is attached hereto as **Exhibit "A"**.

      2.     This is also an action for breach of contract, unfair and deceptive trade practices, and breach of the fiduciary duty of good faith and fair dealing against Defendant for the improper denial and adjustment of property damage claims under the Policy.

3.     Armstrong is a corporation organized under the laws of the State of California, and it maintains its principal place of business in Torrance, California.

4.     At all times relevant herein, Armstrong was and is authorized to transact business in the State of North Carolina and submits itself to the jurisdiction and venue of this Court for purposes of this case only.

5.     Foxrun is a corporation organized under the laws of the State of North Carolina, and it maintains its principal place of business in Lake Lure, North Carolina.

6.     Upon reasonable suspicion and belief, Defendant, Westchester Surplus Lines Insurance Company ("Defendant"), is a foreign corporation organized under the laws of Georgia, maintains its principal place of business in Philadelphia, Pennsylvania, and was licensed to write insurance contracts in the State of North Carolina.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. §§ 1332(a)(1), there being diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     This Court has jurisdiction under 28 U.S.C. §§ 2201, *et seq*.,  because Armstrong and Foxrun seek declaratory relief concerning an actual controversy within this Court's jurisdiction.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Property insured under the Policy that is the subject of this action is situated in Lake Lure, Rutherford County, North Carolina subject to the jurisdiction of this District. As such, venue is proper because the action addresses an insurance dispute involving property, property damage, and interests located within the Western District of North Carolina.

10. North Carolina law governs the adjudication of this civil action and the insurance contract that is the subject of this dispute pursuant to N.C. Gen. Stat. § 58-3-1.

<u>**GENERAL ALLEGATIONS**</u>

11. At all times relevant hereto, Foxrun owns and operates Foxrun Townhouses, a Timeshare Association located in Lake Lure, North Carolina, which is comprised of eighty-two (82) multi-family residential buildings, including the Office Building, which operated as the management office and welcome center located at 180 Herman Wilson Road, Lake Lure, North Carolina 28746 (the "Property").

12. At all times relevant hereto, Armstrong was an is in the business of insurance consulting and procuring appropriate policies of insurance for timeshare associations, such as Foxrun.

13. At all times relevant hereto, Foxrun authorized Armstrong to procure a policy of property insurance to insure the Foxrun Townhouses and Office Building against .

14. In consideration of the premiums paid to it, Defendant issued a Commercial Property Insurance Policy, Policy No. D37406107 007 (the "Policy"), effective April 1, 2021, to April 1, 2022, to Armstrong, insuring the Foxrun Townhouses and Office Building located at 180 Herman Wilson Road, Lake Lure, North Carolina 28746. *See* **Exhibit "A"**, Policy.

15. The Policy's insuring agreement provides that Defendant will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. *See* **Exhibit "A"**, Policy at 14.

16. The Covered Property in the Declarations is located at the described premises on the "Most recent schedule on file with Company totaling $414,138, 596". *See* the Schedule of Values attached as **Exhibit "B"**.

17.     The Schedule of Values on file with Defendant describes the premises of Foxrun Townhomes and its Office Building located at 180 Herman Wilson Road, Lake Lure, Rutherford County, North Carolina 28746, comprised of 140 units within eighty-two (82) buildings. *See* **Exhibit "B"**, Schedule of Values.

18.     At all relevant times hereto, Foxrun was and is an intended beneficiary of the insurance agreement.

19.     At all material times hereto, fire was a covered cause of loss under the Policy.

20.     Foxrun paid all premiums on the Policy, and the Policy was in full force and effect at all relevant times herein.

21.     The Policy and Schedule of Values provides Foxrun with Building Coverage on a replacement cost basis in the amount of $20,000,000.00, Business Personal Property on a replacement cost basis in the amount of $2,500,000.00, subject to a $5,000.00 deductible.

## Factual Background

22.     On November 7, 2021, the Foxrun Office Building sustained damage as a direct physical result of fire.

23.     The November 7, 2021, fire event caused a total loss to the Foxrun Office Building.

24.     The November 7, 2021, fire event caused a total loss to the Foxrun Business Personal Property located within the Office Building at the time of loss.

25.     On November 8, 2021, Armstrong, on behalf of Foxrun, timely reported the damages to Defendant. *See* Property Loss Notice attached as **Exhibit "C"**.

26.     Defendant assigned claim number KY21K2942390 to Foxrun's loss.

27.     Defendant assigned Claim Examiner, Robert Trefcer ("Mr. Trefcer"), to investigate the loss and adjust the claim.

28.     Upon information and belief, Mr. Trefcer is an employee of Defendant.

29.     Defendant, through its representatives, purported to investigate and adjust Foxrun's insurance claim for damages sustained to the Building Property and Business Personal Property from the November 7, 2021, fire loss.

30.     Defendant recognized the validity of the claimed damages and accepted coverage for the loss; however, Defendant and its agents and representatives failed to properly investigate the loss and adjust the claim.

31.     Ultimately, Defendant issued its First Claim Letter to Foxrun two years and seven months after the loss and failed to return the insured Property to its pre-loss condition as required under the Policy.

32.     Armstrong retained BELFOR Property Restoration ("Belfor") as Foxrun's contractor to perform both the Demolition and the Reconstruction of the Building Property destroyed in the November 7, 2021, fire loss.

33.     On November 9, 2021, Armstrong provided Mr. Trefcer's information to Sedgwick, a Third-Party Administrator, adjusting claims on behalf of Defendant.

34.     Upon information and belief, Defendant assigned Foxrun's loss to Sedgwick to assist in the loss investigation and claim adjustment of the subject claim.

35.     On or about November 9, 2021, Sedgwick assigned Foxrun's claim adjustment to General Adjuster, Daniel Hinz ("Mr. Hinz").

36.     On or about November 9, 2021, Sedgwick assigned the initial loss inspection to its local field adjuster, General Adjuster, Daniel Carter ("Mr. Carter").

37.     On November 9, 2021, Sedgwick advised Mr. Carter that Belfor would join the initial loss inspection.

38.    On or about November 12, 2021, Mr. Carter inspected the Property on behalf of Defendant for the purpose of evaluating the damages sustained from the November 7, 2021, fire loss.

39.    On December 15, 2021, Diane Carmain ("Ms. Carmain") of Armstrong emailed Mr. Hinz of Sedgwick requesting an update on the claim adjustment.

40.    On December 16, 2021, Mr. Hinz of Sedgwick responded to Ms. Carmain's email dated December 15, 2021, and stated, in pertinent part, ". . . the debris removal, demo, and clean can begin. ***I have instructed JS Held to work directly with Belfor to make sure they reach an agreement on the scope and cost of the debris removal/demo***." *See* December 16, 2021, Email attached as **Exhibit "D"**. (emphasis added.)

41.    Upon information and belief, on or around January 10, 2022, Doug McCabe of J.S. Held prepared a "Replacement Cost Valuation Estimate as of September 2021 Office" "For Discussion Purposes Only", using Calculator Cost Estimates from the Marshall Valuation Service Manual, which provided a total replacement cost value of $536,000.00 and an actual cash value of $445,000.00. *See* J.S. Held Estimate attached as **Exhibit "E"**.

42.    On January 25, 2022, Ms. Carmain of Armstrong provided a status update via email to Mr. Hinz of Sedgwick regarding the demolition status of the Office Building. Specifically, Ms. Carmain forwarded to Mr. Hinz email correspondence dated January 25, 2022, prepared by Belfor, which stated, "Demo permit picked up and posted. Need to request demolition inspection. Building removed. Old sidewalk and driveway remain. Electrical meter yet to be set after building standards released today." *See* January 25, 2022 & February 25, 2022, Emails attached as **Exhibit "F"**.

43.    On February 25, 2022, Mr. Hinz of Sedgwick responded to Ms. Carmain's email dated January 25, 2022, and attached a demolition estimate prepared by Belfor dated December

21, 2021, with an agreed scope and price of demolition at a replacement cost value of $26,788.02. *See* **Exhibit "F"**, January 25, 2022 & February 25, 2022, Emails.

44.     Belfor, on behalf of Foxrun and Armstrong, and J.S. Held on behalf of Defendant, came to a verbal agreement, as instructed by Mr. Hinz of Sedgwick, on the demolition costs only to be calculated at $26,788.02. *See, supra* at ¶ 40.

45.     Belfor, on behalf of Foxrun and Armstrong, and J.S. Held, on behalf of Defendant, did not enter into an agreement on the cost of Reconstruction of the Building Property.

46.     On July 25, 2022, Mr. Hinz of Sedgwick emailed Ms. Carmain of Armstrong, requesting confirmation of payments received. In response, Ms. Carmain stated "I haven't received any. I haven't seen a Proof of Loss either."

47.     On July 25, 2022, Mr. Hinz of Sedgwick responded to Ms. Carmain of Armstrong, stating, "I will get that corrected immediately. I will provide an update soon."

48.     On September 2, 2022, Mr. Hinz of Sedgwick sent email correspondence to Armstrong's representative, advising, payment in the amount of $466,788.02 was being issued to Foxrun and attached to the email, "the current Statement of Loss that shows the breakdown. . . and the original demo estimate which was submitted by Belfor and the rebuild estimate provided by J.S. Held." Mr. Hinz also stated, "The rebuild estimate was agreed to by Belfor."

49.     Armstrong and Foxrun disputed any agreement to the Rebuild Estimate prepared by Doug McCabe of J.S. Held.

50.     On September 2, 2022, Ms. Carmain of Armstrong responded to Mr. Hinz of Sedgwick's September 2, 2022, email, advising that the documentation provided by J.S. Held and Sedgwick did not include the Belfor invoice for the Mobile Office and also did not include a measure of damages for the Business Personal Property.

51. On or about September 7, 2022, Mr. Hinz of Sedgwick issued an Initial Payment made payable to Foxrun and emailed to Ms. Carmain a Statement of Loss approved by J.S. Held, providing a total replacement cost value of $562,788.02 and an actual cash value of $471,788.02, which is comprised of a Building Replacement Cost Value of $536,000.00, plus Demolition at $26,788.02, less Recoverable Depreciation in the amount of $91,000, less the $5,000.00 Deductible for a Net Claim of $466,788.02. *See* Statement of Loss attached as **Exhibit "G"**.

52. Plaintiff disputed Defendant's evaluation of the cost and scope to rebuild the Building Property destroyed by fire during the November 7, 2021, fire loss.

53. On March 7, 2023, Mr. Hinz of Sedgwick emailed Ms. Carmain of Armstrong, requesting a status update on the reconstruction of the Building Property.

54. On March 9, 2023, Ms. Carmain of Armstrong responded to Mr. Hinz of Sedgwick's March 7, 2023, email, attaching thereto a string of emails between the Architect, Pinnacle Architecture, P.A. and Belfor, regarding a status update on the reconstruction of the Building Property.

55. On May 15, 2023, Ms. Carmain of Armstrong forward to Mr. Hinz of Sedgwick, via email, a Periodic Project Status Report prepared by Architect, Pinnacle Architecture, P.A.

56. On May 17, 2023, Pinnacle Architecture, P.A. submitted the Building Plans for review and approval to the Rutherford County Building Inspections Office.

57. On May 31, 2023, Defendant assigned Claim Examiner, David Royal ("Mr. Royal"), to the handling of Claim No. KY21K2942390.

58. Upon information and belief, Mr. Royal is an employee of Defendant.

59.     On July 18, 2023, Ms. Carmain of Armstrong emailed Mr. Hinz of Sedgwick, a Draft Construction Schedule outlining the specific proposed timeframe for each stage of the Rebuild Project prepared by Belfor.

60.     On July 19, 2023, Ms. Carmain of Armstrong emailed Mr. Hinz of Sedgwick, Site Building Plans prepared by Belfor and Pinnacle Architecture, P.A.

61.     On July 19, 2023, Ms. Carmain of Armstrong sent email correspondence to Mr. Hinz of Sedgwick, forwarding a string of emails between Belfor, Pinnacle Architecture, P.A., the Chimney Rock Village Administrator, and the Rutherford County Project Manager discussing zoning permit applications and triggered county ordinances, with attached Site Reference Plans, Floor Plans, and Exterior Elevations for Mr. Hinz's review.

62.     On July 20, 2023, Belfor prepared a Rebuild Estimate for the Reconstruction of the Building Property at a replacement cost value of $1,380,545.21, which is comprised of a line-item total amount of $1,106,832.64, plus material sales tax in the amount of $34,113.01, for a subtotal amount of $1,140,945.65, plus overhead and profit in the amount of $239,599.56. *See* Belfor Rebuild Estimate dated July 20, 2023, attached as **Exhibit "H"**.

63.     On July 21, 2023, the Belfor Rebuild Estimate dated July 20, 2023, at a replacement cost value of $1,380,545.21, was submitted to JS Held and Sedgwick for review and approval on behalf of Foxrun and Armstrong for the loss adjustment of the Building Property.

64.     On August 1, 2023, Belfor emailed Foxrun requesting a status update on Defendant's approval of the submitted Belfor Rebuild Estimate dated July 20, 2023, and advised that reconstruction could begin within two days of receipt of the executed the work authorization.

65.     On August 1, 2023, Mr. White of Foxrun advised Belfor via email that Foxrun and Armstrong were awaiting approval of the July 20, 2023, Belfor Rebuild Estimate from Defendant.

66. On August 3, 2023, Ms. Carmain of Armstrong emailed Mr. Hinz of Sedgwick, stating, in part, "How can we reconcile the Belfor estimate to build the new building with the estimate created by Doug McCabe? Steve says that the new building is the same square footage, etc. and that he cut corners." *See* Emails dated August 3, 2023, attached as **Exhibit "I"**.

67. On August 3, 2023, Belfor sent email correspondence to Mr. Hinz of Sedgwick, requesting John (JJ) Pearson ("Mr. Pearson"), Vice President of J.S. Held, LLC to get "involved in this so we can work it out[.]" In response, Mr. Hinz stated that he was "sending this over to JJ. I will talk with Chubb as well." *See* **Exhibit "I"**, August 3, 2023, Emails.

68. On August 3, 2023, Belfor sent email correspondence to Mr. Hinz of Sedgwick and Ms. Carmain of Armstrong, advising, "***I talked with JJ and he is going to reprice this. We should see if we can get a couple of local builders to price this out also.***" (emphasis added.) *See* **Exhibit "I"**, August 3, 2023, Emails.

69. On August 3, 2023, Ms. Carmain of Armstrong responded to Belfor's email, copying both Mr. Hinz of Sedgwick and Mr. Pearson of J.S. Held, advising as follows:

> The house/office that burned down was a two-story house with two bedrooms upstairs and a full bathroom with walk in closets. The main floor was a living room, dining room, full kitchen, master bedroom, two bathrooms and an 800 square foot addition. There were tile and wood floors throughout and a full basement. There was a metal roof. The fireplace was stone masonry and wood burning. They had converted the house into an office and welcome center.

*See* **Exhibit "I"**, August 3, 2023, Emails.

70. On August 7, 2023, Belfor emailed Foxrun advising that an electrician was on site to confirm placement of power pole but could not move forward because an agreement was not yet reached with Defendant regarding the Rebuild Estimate.

71. On August 7, 2023, Ms. Carmain of Armstrong emailed Belfor, advising, "We are working with the carrier to get an updated estimate from JS Held."

72. On August 16, 2023, Belfor emailed Foxrun requesting a status on Defendant's approval of the Belfor Rebuild Estimate submitted to Defendant on July 21, 2023.

73. On August 16, 2023, Ms. Carmain of Armstrong responded to Belfor's August 16, 2023, email advising, "As I stated, we are working with the carrier and J.S. Held to come to an agreement on this. We are waiting for an updated replacement estimate. [Foxrun] needs this information to move forward."

74. On August 28, 2023, Belfor emailed Armstrong, requesting an update on Defendant's approval of the Rebuild Estimate submitted to Defendant on July 21, 2023, and advising that crews had been on standby to begin the rebuild project for a week and a half with materials purchased.

75. On September 6, 2023, Ms. Carmain of Armstrong emailed Mr. Hinz of Sedgwick asking, "where J.S. Held is on his repricing and when he is going to be finished."

76. On September 6, 2023, Mr. Hinz responded to Ms. Carmain's September 6, 2023, email, stating, "JS Held is working on their reconstruction estimate. I will have another update either Friday or Monday."

77. On September 8, 2023, Mr. Hinz of Sedgwick sent email correspondence to Ms. Carmain of Armstrong, advising, "We would like to have a call with yourself, Belfor, and the resort manager to discuss the scope and estimate. Could you let me know who all should be on the call?"

78. On September 13, 2023, Ms. Carmain emailed Mr. Hinz of Sedgwick, attaching an EagleView photograph of the Building Property prior to the November 7, 2021, fire loss, stating, "Hi Daniel, Hope this helps."

79.     On or about September 13, 2023, Mr. Pearson of J.S. Held, Mr. Hinz of Sedgwick, Mr. White of Foxrun, and Ms. Carmain of Armstrong met to discuss the differences between the J.S. Held measure of damages and the Belfor measure of damages to the Building Property. Mr. Pearson of J.S. Held sent email correspondence to Ms. Carmain of Armstrong and copied Mr. Hinz of Sedgwick to the email and included therein a table outlining the differences in the measure of damages, which depicted the original size of the building at the time of loss at a total of 3,470.13 square feet compared to the size of the building measured by Belfor at 4,680.34 square feet. *See* email dated September 13, 2023, attached hereto as **Exhibit "J"**.

80.     On September 13, 2023, Ms. Carmain of Armstrong responded to the September 13, 2023, email from Mr. Pearson of J.S. Held and copied Mr. Hinz of Sedgwick, advising that the table provided was incorrect with respect to the measure of damages attributable to the basement. Specifically, the table provided by Mr. Johnson of J.S. Held includes an original basement size of 616.13 sf. and a Belfor size of 1,269.65 sf. Specifically, Ms. Carmain of Armstrong advised that the two measures were backwards, and that "[t]here was a full basement in the original building and [Foxrun] wanted a half basement in the new building." *See* **Exhibit "J"**, September 13, 2023, Email.

81.     On September 14, 2023, Belfor emailed Mr. Hinz of Sedgwick and Mr. White of Foxrun, copying Mr. Pearson of J.S. Held thereto, and advised, in pertinent part, as follows:

> I have created and attached a draft sketch *for the original building* based upon the GIS property summary for the tax year 2021 and using photos taken just days after the loss.
>
> *This sketch matches the SF in the GIS summary*. I can also see the basement and crawl spaces for the original building and the open framed porch from the photos which have been included on the sketch.

*See* email dated September 14, 2023, and attached thereto Draft Sketch attached as **Exhibit "K"**.

82. On September 22, 2023, Ms. Carmain of Armstrong emailed Mr. Hinz of Sedgwick, attaching thereto the Policy's Ordinance or Law Coverage Endorsement, Form ACE0774 (10/18), and highlighting Section D, Subsection 3(b), which provides, as follows:

**D. Coverage**

. . .

**3. Coverage C – Increased Cost of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

**(1)** The cost of excavations, grading, backfilling and filling;
**(2)** Foundation of the building;
**(3)** Pilings; and
**(4)** Underground pipes, flues and drains.
The items listed in b.(1) through b.(4) above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, 3.b.

*See* email dated September 22, 2023, and attached thereto Ordinance or Law Endorsement, Form ACE0774 (10/18), attached as **Exhibit "L"**.

83. As of October 2, 2023, Armstrong and J.S. Held are still communicating about the adjustment of the loss to the Building Property. Specially, on October 2, 2023, Ms. Carmain emailed Belfor regarding a billing error discovered by J.S. Held, stating, " Per our conversation, attached is invoice 2. John (J.J.) Pearson of J.S. Held pointed out the error."

84. On October 3, 2023, Ms. Carmain of Armstrong emailed Mr. Hinz of Sedgwick attaching the corrected billing invoice from Belfor and stated, "Good morning, Daniel, Attached is the corrected invoice 2, with detail for Fox Run."

85.     Upon information and belief, as of October 3, 2023, Defendant had not issued any Claim Correspondence to Foxrun or Armstrong regarding the November 7, 2021, fire loss.

86.     Upon information and belief, as of October 3, 2023, Defendant had not provided Foxrun or Armstrong with any documentation, including a draft measure of damages of Foxrun's Business Personal Property destroyed in the November 7, 2021, fire loss.

87.     Defendant made multiple representations to Armstrong and Foxrun that a Claim Determination Letter would soon be issued but failed to provide any type of Claim Correspondence to Foxrun or Armstrong until June 4, 2024.

88.     On June 4, 2024, Mr. Hinz of Sedgwick sent email correspondence to Ms. Carmain of Armstrong, advising "Diane, David Royal at Chubb has requested that I send you the attached letter. Please make sure that the public adjuster has a copy as well." *See* email correspondence dated June 4, 2024, attached as **Exhibit "M"**.

89.     The "attached letter" referenced by Mr. Hinz in his June 4, 2024, email to Ms. Carmain, included the First Claim Correspondence that Defendant prepared in the subject claim, which was dated May 31, 2024.

90.     The May 31, 2024, Letter prepared by Mr. Royal, employed by Defendant, advises, in part, as follows:

> On November 8, 2021, we received notice of your loss. Daniel Hinz, Regional General Adjuster, of Sedgwick, was engaged to arrange inspection of your property. Mr. Hinz retained JS Held, as a building consultant, on our behalf. JS Held and BELFOR came to a verbal agreement in March 2021 for rebuild and demolition costs calculated at $562,788.02. After application of recoverable depreciation of $91,000.00 and the $5,000 Deductible. A payment for $466,788.02 was issued on September 7, 2022.

*See* Defendant's First Claim Correspondence dated May 31, 2024, attached as **Exhibit "N"**.

91.     Defendant's First Claim Correspondence dated May 31, 2024, prepared by Mr. Royal acknowledges receipt of Belfor's Rebuild Estimate in the amount of $1,380,545.21. *See* **Exhibit "N"**.

92.     Specifically, Mr. Royal alleged the Rebuild Estimate prepared by Belfor in the amount of $1,380,545.21, included "upgrade and costs related to Ordinance Or Law Coverage or commonly known as code compliance" and acknowledged Armstrong's request for costs of construction pursuant to the Increased Cost of Construction provisions in the Policy's Ordinance Or Law Coverage endorsement". *See* **Exhibit "N"**.

93.     Defendant's First Claim Correspondence dated May 31, 2024, prepared by Mr. Royal, "rejects Armstrong's request for further indemnification under the Policy[]" and  "rejects Armstrong's Ordinance Or Law Coverage because the 2 year limitation to complete the repairs have expired[]" and advised that Defendant "wanted to bring these policy terms to your attention so that you are aware of the time frame to complete the repairs and submit a claim for Ordinance or Law Coverage[]". *See* **Exhibit "N"**.

94.     Armstrong and Foxrun submitted a claim for Ordinance or Law Coverage well before the 2-year limitation period identified in the Policy, discussed *supra*, and Defendant's representatives continued to adjust the claim beyond the 2-year limitation period with continual knowledge of the status of the  reconstruction of the Building Property, discussed *supra*.

95.     Defendant's delay in the adjustment process caused Foxrun's delay in the completion of the reconstruction of the Building Property.

96.     On July 26, 2024, Mr. Royal, on behalf of Defendant, issued a Second Claim Correspondence, acknowledging receipt of Foxrun's Business Personal Property Inventory in

support of its Business Personal Property Claim relative to the November 7, 2021, loss event. *See* Defendant's Second Claim Correspondence dated July 26, 2024, attached as **Exhibit "O"**.

97.     In the same correspondence dated July 26, 2024, Mr. Royal states, in part, "Westchester's investigation is ongoing. At present, Westchester requires additional information to assess the coverage, if any, Armstrong may have relative to the Business Personal Property Claim Component. A list of documents and information Westchester is requesting is listed below. Westchester's receipt of these is material to its investigation." *See* **Exhibit "O"**.

98.     In addition, Mr. Royal states, in part, "Ultimately, Westchester wishes to receive all the material information it has requested so it can make a final decision on your Claim." *See* **Exhibit "O"**.

99.     The November 7, 2021, fire loss caused a total loss to Foxrun's insured property, including Building Property and Business Personal Property.

100.     Armstrong, Foxrun, Belfor, Sedgwick, and J.S. Held were in active communication regarding the status of the claim, demolition, permit applications, and reconstruction of the Building Property until Defendant's Claims Examiner, Mr. Royal, instructed Mr. Hinz of Sedgwick to issue Defendant's First Claim Correspondence dated May 31, 2024, to Foxrun and Armstrong.

101.     Defendant failed and/or refused to provide full coverage under the Policy for the damages sustained as a result of a covered cause of loss.

102.     Armstrong and Foxrun repeatedly requested Defendant perform a complete and thorough loss evaluation and issue payment for damages owed under the Policy to return the Property to its pre-loss condition.  However, Defendant failed and/or refused to fully indemnify Foxrun for the loss.

103. Armstrong and Foxrun repeatedly requested Defendant to reconsider and reprice its inaccurate estimate prepared by Mr. McCabe of J.S. Held and pay the damages due and owing to Foxrun under the Policy. However, Defendant failed and/or refused despite substantial evidence provided in support of Foxrun's claim.

104. Defendant ignored evidence Armstrong and Foxrun presented and continues to deny additional payment owed to Foxrun for the covered loss.

105. Armstrong and Foxrun cooperated with Defendant in the investigation, submitted documentation in support of its claim, and allowed full access to the Property.

106. Defendant's refusal to timely pay all benefits due and owing under the Policy is a breach of the insurance contract.

107. Defendant committed unfair and deceptive acts in the investigation and adjustment of Foxrun and Armstrong's insurance claim.

108. Defendant breached its common law obligations of good faith and fair dealings during Foxrun and Armstrong's claim adjustment.

109. Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act in the handling and adjustment of Foxrun's insurance claim.

110. Defendant, as well as its agents and representatives, breached fiduciary duties and obligations to Plaintiffs.

111. Plaintiffs suffered damages as a direct result of Defendant's breach of the insurance contract.

112. Plaintiffs complied with all obligations and conditions under the insurance contract or, alternatively, was excused from doing so by the actions of the Defendant and/or its agents and representatives.

113. Defendant's inadequate investigation and claim adjustment forced Plaintiffs to pay for repairs to the Property without the indemnity claim payment.

114. Defendant's inadequate investigation and claim adjustment forced Plaintiffs to hire attorneys to represent their interests and attempt to reach a fair settlement.

115. Plaintiffs are obligated to pay attorney's fees and costs associated with this action as a direct result of Defendant's aforementioned conduct, as well as its agents and representatives, and, therefore, Plaintiffs seeks reimbursement of such fees and costs in this instance.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

116. Plaintiffs re-allege Paragraphs 1 – 115 as if fully set forth herein.

117. A real and justiciable controversy exists between Plaintiffs and Defendant necessitating judicial determination of the rights and responsibilities of the Parties.

118. Defendant owes duties and responsibilities to Foxrun under the Policy.

119. Plaintiffs request the Court enter judgment declaring the rights and obligations of the Parties pursuant to the insuring agreement, specifically that a contract exists between Defendant and Armstrong, the contract is valid and enforceable, and Defendant and Armstrong intended to confer a direct, and not incidental benefit to Foxrun.

120. Pursuant to N.C. Gen Stat. § 1-253 et seq., this court is vested with the power to declare the rights and responsibilities of the Parties hereto and grant such relief as it deems necessary and proper.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

121. Plaintiffs re-allege Paragraphs 1 - 120 as if fully set forth herein.

122. Defendant breached the insurance contract when it failed and/or refused to issue owed policy benefits to Plaintiffs for damages sustained to the Property during the Policy period from a covered loss.

123. Foxrun's Building Property and Business Personal Property suffered damages as a direct physical result of fire, a covered peril under the Policy.

124. Plaintiffs made an application for insurance benefits under the Policy, but Defendant underpaid the claim and failed and refused to pay the benefits to which Plaintiffs are entitled for the loss.

125. All conditions precedent to obtaining payment of said benefits under the Policy from Defendant have been complied with, met, or waived.

126. Defendant breached the Policy by failing to pay all aforementioned benefits due and owing under the Policy.

127. Plaintiffs suffered damages as a result of Defendant's failure to issue additional payment for owed benefits pursuant to the Policy.

128. Plaintiffs were forced to retain legal counsel to represent their interests in this cause and is obligated to pay attorney's fees and costs associated with this action as a direct result of Defendant's conduct. Therefore, Plaintiffs seek reimbursement of fees and costs in this instance.

**WHEREFORE**, Plaintiffs, ARMSTRONG TIMESHARE ASSOCIATION, INC. and FOXRUN PROPERTY OWNERS ASSOCIATION, INC., demand judgment against the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, for an amount exceeding seventy-five thousand dollars ($75,000), in addition to prejudgment interest, costs of this action, attorney's fees and costs, and all other relief this Court deems appropriate, and Plaintiffs respectfully request a jury trial.

## **THIRD CLAIM FOR RELIEF**
### **Unfair Claims Settlement Practices and Unfair & Deceptive Trade Practices**

129.    Plaintiffs re-alleges Paragraphs 1 - 128 as if fully set forth herein.

130.    North Carolina General Statute §75-1.1(a) establishes the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices by Defendant in this claim were unlawful.

131.    North Carolina General Statute §75-1.1(d) provides, "[a]ny party claiming to be exempt from the provisions of this section shall have the burden of proof with respect to such claim."

132.    North Carolina General Statute §75-16 creates a cause of action to redress injuries caused by these violations and provides that damages shall be trebled.

133.    North Carolina General Statute §75-16.1 further provides for the recovery of attorney's fees when there has been a violation of §75-1.1.

134.    Defendant violated the provisions of N.C. Gen. Stat. §75-1.1 by willfully engaging in such acts or practices, and there was an unwarranted refusal by Defendant to fully resolve the instant matter which constitutes the basis for this action.

135.    North Carolina General Statute §58-63 outlines the unfair and deceptive acts of an insurance company, and Defendant violated multiple sections of this statute with respect to Plaintiffs' claim.

136.    North Carolina General Statute §58-63-15(11) outlines specific unfair and deceptive acts of an insurance company, and Defendant violated this section as pled herein.

137.    Defendant had actual and/or constructive knowledge of Plaintiffs' damages, yet it unfairly, unlawfully and, in bad faith, failed to settle promptly and to pay the claim in violation of North Carolina common law and N.C.G.S. § 58-63-15.

138.    Upon information and belief, the conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15, and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

      a.   N.C.G.S. §58-63-15(11) a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, particularly within its correspondence dated May 31, 2024, wherein Defendant advises Plaintiffs for the first time of its refusal to provide full indemnification under the Policy for Ordinance or Law seven months after the Policy provision upon which Defendant relies.

      b.   N.C.G.S. §58-63-15(11) c. Failing to adopt and implement reasonable standards for the prompt investigation of Plaintiffs' claim. Defendant refused to consider or ignored overwhelming documentation submitted by Plaintiffs to Defendant.

      c.   N.C.G.S. §58-63-15(11) d. Refusing to pay claims without conducting a reasonable investigation based upon all available information. Defendant's investigation was not reasonable, and Defendant, including Mr. Royal was simply looking for a way to place Defendant's profits and financial interest above the interests of its insured by issuing the First Claim Correspondence on May 31, 2024.

      d.   N.C.G.S. §58-63-15(11) f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

      e.   N.C.G.S. §58-63-15(11) g. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less

than the amounts of damage and the amounts ultimately recovered in actions brough by such insureds. Defendant's refusal to properly and thoroughly inspect the Property despite Plaintiffs' repeated pleas for assistance compelled Plaintiffs to institute litigation. Defendant's refusal to consider Plaintiffs' submitted documentation in support of Plaintiffs' claim on multiple occasions compelled Plaintiffs to institute litigation to recover the amounts due under the insurance policy. Therefore, Plaintiffs were forced to institute litigation to recover the benefits owed under the Policy.

139. Defendant's above-described conduct, all in violation of N.C.G.S. §58-63, was unfair, unscrupulous, immoral, and injurious to consumers, and therefore offended the public policy standards established by N.C.G.S. §75-1.

140. The above-described conduct of Defendant is not based upon an honest disagreement or innocent mistake.

141. The above-described actions of Defendant were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of the rights of Foxrun and Armstrong.

142. The above-described unfair and deceptive trade acts or practices committed by Defendant were in or affecting commerce.

143. Foxrun and Armstrong pleaded with Defendant to reconsider its position on multiple occasions and provided substantial documentation in support of the same, but Defendant ignored the documentation and information submitted and continued to improperly deny the Claim.

144.    As a proximate result of the unfair claim settlement practices and unfair and deceptive trade acts and practices committed by Defendant, Plaintiffs suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

145.    Pursuant to N.C.G.S. § 75-16, Plaintiffs are entitled to treble its damages.

146.    Pursuant to N.C.G.S. § 75-16.1, Plaintiffs are entitled to an award of reasonable attorney's fees.

147.    Plaintiffs' damages are not presently fully capable of admeasurement, but in any event far exceed this Court's jurisdictional threshold.

**WHEREFORE**, Plaintiffs, ARMSTRONG TIMESHARE ASSOCIATION, INC. and FOXRUN PROPERTY OWNERS ASSOCIATION, INC., demand judgment against the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, for an amount exceeding seventy-five thousand dollars ($75,000), in addition to prejudgment interest, costs of this action, attorney's fees and costs, and all other relief this Court deems appropriate, and Plaintiffs respectfully request a jury trial.

### FOURTH CLAIM FOR RELIEF
**Breach of the Covenant of Good Faith and Fair Dealing**

148.    Plaintiff re-alleges Paragraphs 1 – 147 as if fully set forth herein.

149.    An insurance company such as WESTCHESTER SURPLUS LINES INSURANCE COMPANY has a duty to conduct a prompt, honest and thorough investigation of facts in relation to coverages at issue at its own expense, with competent, sufficiently trained and motivated adjusters who are able to complete the aforementioned adjustment.

150.    As alleged above, Defendant acted in bad faith by refusing to provide Plaintiffs with the benefits of the contract and failing to pay owed insurance benefits under the Policy.

151.     Plaintiffs have the right to a fair and prompt investigation, payment and/or settlement of their claim.

152.     Defendant failed to investigate and adjust Plaintiffs' claim for damages fairly and adequately. Defendant's investigation and adjustment of Plaintiffs' claim was grossly negligent and reckless.

153.     Defendant's actions in failing to adequately investigate this claim and intentionally undervaluing the claim shows a clear disregard for the interests of Armstrong and Foxrun.

154.     Defendant failed to investigate and adjust the Claim fairly and adequately, including through its refusal to update the J.S. Held Estimate to provide allowances for constructions costs that are reasonable and necessary to repair damage to the Property.

155.     An insurance company has a duty to conduct a prompt, honest and thorough investigation of facts in relation to coverages at issue at its own expense, with competent, sufficiently trained and motivated adjusters who are able to complete the aforementioned adjustment.

156.     As alleged in further detail above, Defendant's actions caused a breach of the insurance contract in bad faith by refusing to provide Plaintiffs with the benefits of the contract and failing to pay owed insurance benefits under the Policy.

157.     The conduct of Defendant as alleged herein, was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

158.     The conduct, actions, omissions and refusals by Defendant to timely and promptly adjust and pay the Claim constitutes bad faith. A nonexclusive list of Defendant's bad faith includes:

a.     Misrepresenting pertinent facts relating to coverage at issue, particularly with its

refusal to indemnify Plaintiffs under the Policy two years and seven months after the November 7, 2021, fire loss while continuing to adjust the Claim up and until May 31, 2021, when it issued the First Claim Correspondence;

b.      Failing to acknowledge and act reasonably promptly upon communications with respect to the Claim;

c.      Purposefully understating the amount of loss despite being provided with information demonstrating that the J.S. Held Estimate did not represent the reasonable cost to repair the buildings damaged by the November 7, 2021, Fire;

d.      Failing to acknowledge and act reasonably promptly upon evidence from Plaintiffs;

e.      Refusing to provide reasonably prompt and clear communications as to why the estimate supplied by Belfor did not represent the reasonable cost to repair damage to the Building Property caused by fire;

f.      Purposefully engaging in numerous delay tactics in order to pressure Plaintiffs to forego pursuing coverage and full payment of the Claim and eventually forcing Plaintiffs to initiate this lawsuit in order to recover the amount that is owed on the Claim;

g.      Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim, despite liability under the Policy being reasonably clear; and

h.      As will otherwise be shown through discovery and trial.

159.    As a proximate result of the breach of the covenant of good faith and fair dealing by Defendant, Plaintiffs have been damaged in an amount in excess of this Court's jurisdictional threshold. Additionally, Plaintiffs are entitled to recover punitive damages from Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by

law.

160.    As a further direct result of Defendant's bad faith actions, Plaintiffs are obligated to pay attorneys' fees and costs in connection with the prosecution of this action.

161.    Plaintiffs respectfully request such further general or specific relief to which it is entitled to at law or in equity.

**WHEREFORE**, Plaintiffs, ARMSTRONG TIMESHARE ASSOCIATION, INC. and FOXRUN PROPERTY OWNERS ASSOCIATION, INC., demand judgment against the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, for an amount exceeding seventy-five thousand dollars ($75,000), in addition to prejudgment interest, costs of this action, attorney's fees and costs, and all other relief this Court deems appropriate, and Plaintiffs respectfully request a jury trial.

## DEMAND FOR JURY TRIAL

Plaintiffs, ARMSTRONG TIMESHARE ASSOCIATION, INC. and FOXRUN PROPERTY OWNERS ASSOCIATION, INC., demand a trial by jury on all issues so triable.

Dated: November 7, 2024.

/s/ *Beaujeaux de Lapouyade*
Beajeaux de Lapouyade, Esq.
North Carolina Bar No.: 51255
Merlin Law Group, PLLC
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692
*Counsel for Plaintiff*
bdelapouyade@merlinlawgroup.com
lbflteam@merlinlawgroup.com